## JUDITH A. CATO *v.* HERBERT J. CATO, JR.
## (14546)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued January 7—decision released June 22, 1993

*William H. Meanix, Jr.,* with whom were *William R. Kinloch* and *Daniel C. Spineti,* for the appellant (defendant).

*John K. Currie,* with whom was *Courtney B. Bourns,* for the appellee (plaintiff).

BERDON, J. The sole issue in this appeal is whether an order of notice is necessary to meet the jurisdictional requirements of General Statutes (Rev. to 1989) § 46b-46,[1] the domestic relations long-arm statute. In

[1] General Statutes (Rev. to 1989) § 46b-46 provides: "(a) On a complaint for dissolution, annulment or legal separation, if the defendant resides out of or is absent from the state or the whereabouts of the defendant is unknown to the plaintiff, any judge or clerk of the supreme court or of the superior court may make such order of notice as he deems reasonable. After notice has been given and proved to the court, the court may hear the complaint if it finds that the defendant has actually received notice that the complaint is pending. If it does not appear that the defendant has had such notice, the court may hear the case, or, if it sees cause, order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with.

"(b) The court may exercise personal jurisdiction over the nonresident party as matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received actual notice under subsection (a) of this section; and (2) the party requesting alimony or support of children meets the residency requirement of section 46b-44; and (3) this state was the domicile of both parties immediately prior to or at the time of their separation."

After the trial court decided this case, § 46b-46 was amended by No. 91-391, § 3 of the 1991 Public Acts. The amendment is not relevant to the issue in this case.

this action for a dissolution of marriage, the defendant, who resided in Texas and received in-hand service of process by a process server in Texas, challenges the jurisdiction of the court because process was not served pursuant to an order of notice by a judge or clerk of the Superior Court.

The following facts are undisputed. The defendant, Herbert J. Cato, and the plaintiff, Judith A. Cato, were married in New York in 1965. They purchased a home in Bloomfield in 1970 and were domiciled there until their separation in March, 1989. After their separation, the defendant moved to Texas where he was personally served with a writ, summons and complaint brought by the plaintiff, seeking a dissolution of the marriage. The defendant was served in-hand, by a Texas sheriff, a process server. The defendant appeared specially to contest personal jurisdiction.[2] The defendant also filed two motions to dismiss,[3] both of which were denied by the trial court, *Barall, J.*, on the ground that the order of notice requirement in § 46b-46 is permissive and not mandatory.

After hearing the merits of the case, the trial court, *Steinberg, J.*, rendered judgment dissolving the marriage of the parties. The trial court ordered the defendant to pay periodic alimony to the plaintiff, to maintain life insurance coverage for the benefit of the plaintiff, to convey to the plaintiff his interest in the family home, and to pay attorney's fees. The defendant appealed to the Appellate Court, claiming that "the trial court improperly determined that the process and service of

[2] Although the defendant in this case appeared specially, a defendant may contest jurisdiction "even after having entered a general appearance . . . by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book § 142.

[3] The motions to dismiss were entitled "Motion to Dismiss for Insufficiency of Process and Insufficiency of Service of Process," and "Motion to Dismiss for Lack of Personal Jurisdiction over Defendant."

process were sufficient, and that the court had personal jurisdiction over him." *Cato* v. *Cato,* 27 Conn. App. 142, 143, 605 A.2d 558 (1992). A divided Appellate Court affirmed the judgment of the trial court. The defendant petitioned this court for certification. We granted his petition, limited to the following issue: "Was the divided Appellate Court correct in holding in a claim for dissolution that General Statutes § 52-57a allows for in-hand service of process by a Texas sheriff on a nonresident defendant in Texas without an order of notice having been obtained as provided for in the domestic relations long-arm statute, General Statutes § 46b-46?" *Cato* v. *Cato,* 222 Conn. 906, 608 A.2d 691 (1992). We affirm.

The defendant does not challenge the constitutionality of § 46b-46 or suggest that the statutory requirements, if met, do not comport with due process. Rather, the defendant argues that because the statute provides the basis for obtaining jurisdiction, due process requires strict compliance with the methods set forth by the statute. He argues that the statute mandates an order of notice as a condition precedent to actual notice and submits that the plaintiff's failure to comply with this statutory requirement deprived him of his property without due process of law. We conclude that an order of notice under § 46b-46 is permissive, not mandatory, and is not a condition precedent to effective, in-hand service in another state pursuant to § 52-57a, which provides that "[a] person domiciled in or subject to the jurisdiction of the courts of this state . . . may be served with process without the state, in the same manner as service is made within the state, by any person authorized to make service by the laws of the state, territory, possession or country in which service is to be made . . . ."[4]

---

[4] Of course, in-hand service of process is authorized as a means of service for persons in this state. General Statutes § 52-57 (a) provides in rele-

At issue is the construction to be afforded § 46b-46 (a) and (b). We begin our analysis by noting the well established principle that "statutes providing for parental support and maintenance of minor children are to be broadly construed." *Jones* v. *Jones,* 199 Conn. 287, 291, 507 A.2d 88 (1986). Moreover, we have previously recognized that "in enacting a long-arm statute with respect to family matters, the legislature intended to exercise its full constitutional power, limited only by the constraints of due process, over nonresidents being sued for nonsupport of their children." Id., 292.

Section 46b-46 (a) provides: "On a complaint for dissolution, annulment or legal separation, if the defendant resides out of or is absent from the state or the whereabouts of the defendant is unknown to the plaintiff, any judge or clerk of the supreme court or of the superior court *may make such order of notice* as he deems reasonable. *After notice* has been given and proved to the court, the court may hear the complaint if it finds that the defendant has actually received notice that the complaint is pending." (Emphasis added.) Section 46b-46 (b) provides in part: "The court may exercise personal jurisdiction over the nonresident party as matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received actual notice under subsection (a) of this section . . . ."[5] Subsection (a) "confers jurisdiction upon a court to deal with complaints for dissolution, annulment or legal separation when the defendant is a nonresident or his whereabouts are

---

vant part: "[P]rocess in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."

[5] The defendant concedes that the requirements of General Statutes § 46b-46 (b) (2) and (3) were satisfied in this case. These subdivisions require that the party requesting alimony or support of children meet the residency requirement of General Statutes § 46b-44 and that both parties were domiciled in this state immediately prior to or at the time of their separation.

unknown"; *Jones* v. *Jones,* supra, 290–91; and "describes the procedures that are to be followed to give such a nonresident party actual notice of the pending proceedings, and authorizes the court to hear the complaint . . . ." Id., 291. Subsection (b), which incorporates the procedural rules of subsection (a), provides personal jurisdiction over nonresident defendants in domestic relations cases. Id., 290–92.

Neither party disputes that the first sentence of § 46b-46 (a) is permissive and merely gives a judge or clerk the option of issuing an order of notice. The second sentence is the source of dispute. The defendant claims that the language *"[a]fter notice* has been given and proved to the court, the court may hear the complaint if it finds that the defendant has actually received notice" makes an order of notice a necessary prerequisite to a finding of actual notice. He further contends that the personal jurisdiction requirements of subsection (b) cannot be met unless an order of notice is issued pursuant to subsection (a). We disagree.

This court has often held that "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *Weinberg* v. *ARA Vending Co.,* 223 Conn. 336, 341, 612 A.2d 1203 (1992). In this case, the plain language of the statute does not support the defendant's contention that an order of notice is mandatory. As noted above, the first sentence of § 46b-46 (a) gives a judge or clerk the option of making an order of notice. The second sentence does not say "after *an order of* notice"; rather, it provides that after notice has been served and proved to the court, the court must determine whether the defendant had *actual* notice of the complaint. The phrase "[a]fter notice has been given and proved to the court," is subordinate to the remainder of the sentence which

focuses on the essential determination of whether the defendant has received *actual* notice of the proceedings. The plain language of the statute supports our conclusion that an order of notice is a permissive means of achieving the goal of actual notice to a defendant.

Our reading of the statute is consistent with our holding in *Smith* v. *Smith,* 150 Conn. 15, 183 A.2d 848 (1962). In *Smith,* this court held that the trial court had jurisdiction to render a decree of separation and in personam jurisdiction to order a money judgment for alimony pendente lite following abode service on a defendant who resided in Connecticut but was absent from the state when the service was made. We examined the language of General Statutes § 46-17,[6] now codified in § 46b-46 (a), which pertains not only to service of defendants who reside out of state, but also to service of defendants who are *absent* from the state, and concluded that an order of notice under the statute was permissive and not mandatory.[7] "Section

---

[6] Although the statutory section has been renumbered, its language remains substantively similar. General Statutes (1958 Rev.) § 46-17 provided in part: "On a complaint for divorce when the adverse party resides out of or is absent from the state or the whereabouts of the adverse party is unknown to the plaintiff, any judge or clerk of the supreme court . . . or of the superior court . . . may make such order of notice as he deems reasonable. Such notice having been given and proved to the court, such court may hear such complaint if it finds that the defendant has actually received notice that the complaint is pending, and, if it does not appear that the defendant has had such notice, the court may hear such case, or, if it sees cause, order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with."

[7] The dissent's attempt to distinguish our holding in *Smith* v. *Smith,* 150 Conn. 15, 183 A.2d 848 (1962), on the ground that the defendant in *Smith* was domiciled in Connecticut eludes us. General Statutes (1958 Rev.) § 46-17, now codified at General Statutes § 46b-46, which formed the basis for our decision in *Smith,* specifically states that it applies *equally* to persons who reside out of state and to persons who *are absent from the state.* Accordingly, it does not make sense to find that the statute mandates an order of notice for out-of-state residents but does not mandate an order of notice for persons domiciled in Connecticut, but absent from the state. The statute requires the same procedures for both groups.

46-17, by its express terms, is *permissive* and not mandatory. An order of notice is merely authorized. Whether an order of notice should be sought or, if sought, should be granted and, if granted, what form it should take depend on the particular factual situation as it bears on the question of notice to a defendant, where the question of notice is important. If service in personam is achieved . . . there is ordinarily no occasion for an order of notice." (Emphasis added.) *Smith* v. *Smith,* supra, 21. In short, subsection (a) provides one method, but not the only method, of providing notice to a defendant. The purpose of subsection (a) is not to ensure absolute adherence to its procedural suggestions, but to provide a plaintiff with "a method of making certain that the constitutional requirements of due process have been satisfied, where these involve notice of the proceedings and an opportunity to defend." Id., 22.

We note, additionally, the narrow construction advanced by the defendant would serve no practical function. The purpose of an order of notice is to ensure that the defendant actually receives notice. See 1 W. Moller & W. Horton, Connecticut Practice Book Annotated (3d Ed. 1989) § 199, comment. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). In this case, the defendant received in-hand service of process. We have often held that in-hand service of process is the "best and highest type of service" and should be used whenever possible. *Smith* v. *Smith,* supra, 22–23. An order of notice could have done nothing more to ensure that the defendant actually received notice.

Accordingly, it would ignore the very purpose of the statute to construe § 46b-46 so strictly as to make an order of notice a condition precedent to the form of service most likely to result in actual notice to the defendant.

Furthermore, the defendant advances no policy reason for mandating an order of notice other than that it allows the Superior Court to maintain control over these procedures. This control is effectively exercised under § 46b-46, which requires that notice be "proved to the court" and that the court find that the defendant has "actually received notice" before the trial court hears the plaintiff on the merits of the case.[8]

We conclude that in a case such as this, where service of process can be accomplished by the most reliable means—that is, in-hand service of process by a process server in accordance with § 52-57a—an order of notice is not required pursuant to § 46b-46.[9] Accordingly, the service of process issued to the defendant in this case was sufficient to provide the court with jurisdiction over the complaint and the defendant.

The judgment is affirmed.

In this opinion PETERS, C. J., and KATZ, J., concurred.

---

[8] An additional means of control is provided by General Statutes § 52-87, which requires a three month continuance following a nonresident defendant's failure to appear, and authorizes a judge to direct further notice to the nonappearing party.

[9] The defendant argues that *Bank Mart* v. *Langley,* 39 Conn. Sup. 198, 474 A.2d 491 (1984), makes an order of notice a prerequisite to personal service made under General Statutes § 52-57a. The defendant misreads *Bank Mart,* which focused on the sufficiency of service by newspaper publication. *Bank Mart* held that notice by newspaper publication should be used only as a last resort and stated that "if notice *by publication* is to be utilized, the plaintiff must clearly and in detail set forth in affidavit form all the steps taken to determine whether notice by some other form could be given so that the court may make an independent determination of the adequacy of notice." (Emphasis added.) Id., 201–202.

BORDEN, J., with whom CALLAHAN, J., joins, dissenting. The majority opinion: (1) ignores the relevant historical background of General Statutes § 46b-46, the statute at issue in this case; (2) renders critical language of the statute superfluous; (3) ignores the meaning of the language that it quotes from our only precedent interpreting the statute; (4) fails to recognize the legitimate purposes of the statutory requirement of an order of notice; (5) confuses the question of the interpretation of a long-arm statute with the question of its constitutionality; (6) blurs the distinction, long recognized in our law, between service of process and notice; (7) creates a mechanism for acquiring personal jurisdiction over a domiciliary of another state that is unheard of in any of our other statutes providing for such acquisition of jurisdiction; and (8) relies for support on a clearly distinguishable and inapplicable case. I therefore dissent.

First, the majority ignores the historical background of § 46b-46. Prior to 1975, our law was clear that, in a marital dissolution case, our courts could not obtain personal jurisdiction over an out-of-state domiciliary, who had not been personally served within the state, for purposes of entering enforceable financial orders. See, e.g., *Carter* v. *Carter,* 147 Conn. 238, 241–42, 159 A.2d 173 (1960). Although the court could, if the plaintiff complied with what was then General Statutes (Rev. to 1975) § 46-39[1] and is now General Statutes § 46b-46 (a), obtain subject matter jurisdiction over the marriage for purposes of rendering a judgment of dis-

---

[1] General Statutes (Rev. to 1975) § 46-39 provided: "ORDER OF NOTICE TO ABSENT PARTY. WHEN COMPLAINT MAY BE CONTINUED. On a complaint for dissolution or annulment of marriage . . . when the adverse party resides out of or is absent from the state or the whereabouts of the adverse party is unknown to the plaintiff, any judge or clerk of the supreme court or of the superior court may make such order of notice as he deems reasonable. Such notice having been given and proved to the court, such court may hear such complaint if it finds that the defendant has actually received

solution and custody of any children, it could not, absent the consent of the nondomiciliary or personal service on the nondomiciliary within the state, obtain personal jurisdiction over him for purposes of such financial matters as alimony and support.[2] *Carter* v. *Carter,* supra. Every marital law practitioner knew, however, that to enable the Superior Court even to begin to proceed with a dissolution action involving a nondomiciliary defendant—that is, for the court to have jurisdiction over the res of the marriage, albeit not over the absent defendant's person—it was necessary to secure an order of notice pursuant to § 46-39 and proceed further according to that statutory section.[3]

This state of affairs was not due to any constitutional limitation; rather, it was because Connecticut had not

notice that the complaint is pending, and, if it does not appear that the defendant has had such notice, the court may hear such case, or, if it sees cause, order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with.''

[2] Prior to 1977, a plaintiff in a dissolution proceeding could also establish jurisdiction by attaching property of the defendant that was located within the state, and securing a quasi in rem judgment. *Carter* v. *Carter,* 147 Conn. 238, 241–42, 159 A.2d 173 (1960). This form of relief, however, became unavailable after the United States Supreme Court's decision in *Shaffer* v. *Heitner,* 433 U.S. 186, 212, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). See generally note, ''Transient Jurisdiction is Here to Stay: *Burnham* v. *Superior Court of California,*'' 23 Conn. L. Rev. 1125, 1131–37 (1991).

[3] That process, as provided by General Statutes (Rev. to 1975) § 46-39, was that ''[s]uch notice having been given and proved to the court, such court may hear such complaint if it finds that the defendant has actually received notice that the complaint is pending . . . .'' If, however, the defendant had not received such notice by way of the first order of notice, the court could either (1) ''hear [the] case,'' or (2) ''order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with.'' Thus, pursuant to the statute prior to 1975 and the practice prevailing thereunder, if the defendant received actual notice pursuant to the first order of notice, the court could hear the case and render a dissolution judgment (but not financial orders). If the first order of notice had been unsuccessful, often the court would dispense with any further order of notice and proceed to hear the case. Sometimes, however, particularly if it appeared that a second order of notice might be success-

seen fit to exercise, through statute, its constitutional power to obtain personal jurisdiction over such marital nondomiciliaries. Thus, although a Connecticut wife (typically) could dissolve her marriage to her absent husband, she could not, in the context of the dissolution proceedings, secure enforceable alimony or support orders.

Hence the enactment in 1975 of Public Act No. 75-276, which redesignated § 46-39 as § 46-39 (a), and added thereto subsection (b) of § 46-39 as follows: "When the nonresident party has received actual notice *pursuant to subsection (a) of this section*, and the party requesting alimony or support of children meets the residency requirement of section 46-35, and this state was the domicile of both parties immediately prior to or at the time of their separation, the court may exercise personal jurisdiction over the nonresident party as to all matters concerning temporary or permanent alimony or support of children." (Emphasis added.) General Statutes (Rev. to 1977) § 46-39 (a) and (b) is now codified, with some subsequent amendments not at issue in this case, as General Statutes § 46b-46 (a) and (b).[4]

ful in giving the defendant notice, the court would issue a second order and, upon compliance with that order, proceed to hear the case even if that order of notice was unsuccessful in reaching the defendant.

In any event, it was unheard of for a plaintiff to institute a dissolution action against an out-of-state domiciliary by simply shipping a copy of the complaint to an out-of-state sheriff for service on the defendant, without an order of notice by our own court. General Statutes (Rev. to 1975) § 46-39, now General Statutes § 46b-46 (a), has never, until the majority's decision in this case, been understood to permit our courts to acquire jurisdiction over either the marriage res, for purposes of the dissolution of the marriage, or over the defendant's person, by that informal process.

[4] General Statutes § 46b-46, formerly § 46-39, provides: "NOTICE TO NONRESIDENT PARTY. JURISDICTION OVER NONRESIDENT FOR ALIMONY AND SUPPORT. (a) On a complaint for dissolution, annulment, legal separation or custody, if the defendant resides out of or is absent from the state or the whereabouts of the defendant is unknown to the plaintiff, any judge or clerk of the supreme court or of the superior court may make such order of notice as he deems reasonable. After notice has been given and proved to the court,

This history makes clear that the purpose of § 46b-46 (b) was to permit our courts to obtain personal jurisdiction over nondomiciliary marital defendants by serving them pursuant to the kind of notice that had previously been employed to obtain jurisdiction over the marriage res, namely, an order of notice issued under § 46b-46 (a). Indeed, that is the purpose and effect of the language in § 46b-46 (b) that the court could exercise personal jurisdiction over the non-domiciliary party only if that party had received actual notice "under subsection (a) of this section."

The majority, however, holds that a type of service of notice never before countenanced under § 46b-46 (a) now suffices, namely, service by a sheriff of a foreign state upon the sole direction of the plaintiff's attorney, without any authorization by the Superior Court. Thus, according to the reasoning of the majority, the legis-lature, by enacting § 46b-46 (b), somehow also ipso facto amended § 46b-46 (a).

This leads to my second criticism of the majority opinion: the opinion renders superfluous the critical language, "under subsection (a) of this section," and fails to read the entire context of subsection (a). The critical language involved refers, not only to the defendant's receipt of actual notice, as the majority

---

the court may hear the complaint if it finds that the defendant has actually received notice that the complaint is pending. If it does not appear that the defendant has had such notice, the court may hear the case, or, if it sees cause, order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with. Nothing in this section shall be construed to affect the jurisdictional requirements of chapter 815o in a complaint for custody.

"(b) The court may exercise personal jurisdiction over the nonresident party as matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received actual notice under subsection (a) of this section; and (2) the party requesting alimony or support of children meets the residency requirement of section 46b-44; and (3) this state was the domicile of both parties immediately prior to or at the time of their separation."

holds, but to the fact that such notice must have been received "under subsection (a)." The only notice provided for under subsection (a) is notice pursuant to an order of notice. That is the only type of notice that subsection (a) had ever provided for, and that is the type of notice to which the phrase, "under subsection (a)," refers. The majority reads that phrase, however, as referring only to the second sentence of subsection (a), divorced from the first and third sentences.[5]

This analysis leads, in turn, to my third reason for disagreement with the majority: its quotation from our decision in *Jones* v. *Jones,* 199 Conn. 287, 291, 507 A.2d 88 (1986), while at the same time ignoring the meaning of the very language it quotes. The majority states: "Subsection (a) [of General Statutes § 46b-46] 'confers jurisdiction upon a court to deal with complaints for dissolution, annulment or legal separation when the defendant is a nonresident or his whereabouts are unknown'; *Jones* v. *Jones,* supra, 290–91; and 'describes the procedures that are to be followed to give such a nonresident party actual notice of the pending proceedings, and authorizes the court to hear the complaint . . . .' Id., 291. Subsection (b), which incorporates the procedural rules of subsection (a), provides personal

---

[5] The second sentence of General Statutes § 46b-46 (a), on which the majority's opinion rests, is: "After notice has been given and proved to the court, the court may hear the complaint if it finds that the defendant has actually received notice that the complaint is pending." If this were all there were to subsection (a), I would be inclined to agree with the majority. That one sentence, however, does not exist in a vacuum. It is preceded by the first sentence, which sets forth the method of providing notice to the absent defendant; and it is followed by the third sentence, which contains two references, namely, to "such notice" and "such further notice," that clearly equate the "notice" in the second sentence with the "notice" in the first and third sentences. Indeed, it would be an odd way to draft a statute to use the same term in three successive sentences with a different meaning in the second sentence from that in the first and third sentences. We should not attribute such exotic and dysfunctional draftsmanship to the legislature.

jurisdiction over nonresident defendants in domestic relations cases. Id., 290–92.'' Unless I simply do not understand the English language, this is precisely what I have stated in my first two reasons for disagreement with the majority above.

Indeed, the entire passage from *Jones* makes the point even more clearly. That passage is as follows: ''From this perspective,[6] we conclude that the defendant has read § 46b-46 (b)'s reference to 'actual notice under subsection (a)' too narrowly. That requirement does not necessarily imply a linkage between the timing of a dissolution decree and an order for child support. *It is more likely that the legislature intended by the reference to interpolate into subsection (b) the procedural rules for notification that are contained in subsection (a). Needing to provide instructions for the manner in which notice should be given to a nonresident defendant against whom a nonsupport claim is pending, the legislature intended to incorporate by reference the applicable rules already set out in subsection (a) for complaints for dissolution, annulment or legal separation.''* (Emphasis added.) *Jones* v. *Jones,* supra, 292.

Nor can it tenably be argued that this passage is dictum. Although the precise issue in *Jones* was different from the issue in this case,[7] this passage was the

---

[6] The ''perspective'' referred to is the assumption that the legislature, in enacting General Statutes § 46b-46 (b), intended to exercise its full constitutional power. *Jones* v. *Jones,* 199 Conn. 287, 292, 507 A.2d 88 (1986).

[7] The issue in *Jones* v. *Jones,* 199 Conn. 287, 287–90, 507 A.2d 88 (1986), was whether, following a decree of dissolution rendered *before* the enactment of General Statutes § 46b-46 (b) pursuant to which the nondomiciliary defendant was not personally bound for support, the plaintiff could, *after* the enactment of § 46b-46 (b), use the provisions of that statute to obtain personal jurisdiction over the still nondomiciliary defendant for purposes of the court rendering a prospective support obligation. The plaintiff secured an order of notice against the absent defendant. Id., 289. This court held that § 46b-46 (b) did so apply.

court's response to the defendant's argument that "a court's lack of personal jurisdiction at the time of the rendering of a decree of dissolution of marriage constitutes a noncurable deficiency that forever precludes personal jurisdiction to modify the decree to impose a support obligation." Id., 290. It cannot be that the legislature intended subsection (b) to incorporate "the manner in which notice should be given to a nonresident defendant against whom a nonsupport claim is pending"; id., 292; but did not intend subsection (b) to incorporate the same rules for purposes of the issue in this case, namely, the manner in which notice should be given to a nonresident defendant against whom a dissolution complaint is pending.

Fourth, the majority fails to recognize the legitimate purposes of the statutory requirement of an order of notice pursuant to § 46b-46 (a). The majority states: "[T]he narrow construction advanced by the defendant would serve no practical function." The majority argues that because the purpose of an order of notice is to ensure that the defendant actually receives notice, "an order of notice could have done nothing more to ensure that the defendant actually received notice."

I submit that this argument overlooks at least two other practical functions of an order of notice directed to an out-of-state domiciliary. It impresses on that party the seriousness of the summons served upon him, by assuring him that it is not only his marital adversary's lawyer who is summoning him to appear, but the courts of the state of his former domicile as well.

Furthermore, it lodges in the courts of this state a control over the notice giving procedure that the majority does not address: by requiring that the notice be given pursuant to a judicially authorized order of notice, rather than simply by a Connecticut attorney shipping the complaint to an out-of-state sheriff for ser-

vice, the statute avoids the kind of litigation inducing questions that the majority's holding is likely to engender.[8] It is no answer to this argument, furthermore, to say that we will deal with those questions as they arise, as we sometimes do in appellate opinions. By disconnecting subsection (b) from subsection (a) in the way that the majority has done, it has removed any ascertainable and principled bounds by which these future cases can be determined. By reading subsection (b) to incorporate subsection (a), however, as we did in *Jones,* trial courts and this court need not decide those questions, and the only cost thereof is to require the Connecticut resident to secure an order of notice—hardly a difficult thing to do.

This leads to my fifth reason: the majority has confused the process of interpreting a long-arm statute with deciding its constitutionality as applied to the facts of a given case. The majority notes that due process requires notice reasonably calculated to apprise interested parties of the action and afford them an oppor-

---

[8] For example, I suppose that the majority's reading of the statute would necessarily also sanction service by the Connecticut attorney sending the complaint by certified mail, return receipt requested, without the intervention of an out-of-state sheriff. If the majority is correct in its assertion that all that is required under subsection (b) is actual notice under subsection (a), without regard to how that notice was given, this supposition seems inevitable. If we were the legislature writing such a statute; see, e.g., *Tolly* v. *Department of Human Resources,* 225 Conn. 13, 29, 621 A.2d 719 (1993); that might, or might not, recommend itself to us as a sensible policy. I cannot believe, however, that this statutory scheme embodies such a notion, and would require clearer legislative intent to do so before reading a statute to sanction such a radical departure from traditional methods of securing personal jurisdiction over out-of-state parties. Furthermore, what, then, about ordinary mail, where the Connecticut party then telephones the out-of-state party and determines that he did in fact receive the envelope? Why not, also, the Connecticut party simply traveling across state lines and delivering the complaint to her spouse herself? My point is that, if actual notice is the linchpin, and the method is irrelevant—as the analysis of the majority implies—all these questions serve as potential grist for the litigation mill.

tunity to be heard. See *Mullane* v. *Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). I agree, but due process is irrelevant to this case. It is hornbook law that, in order for the courts of one state to acquire personal jurisdiction over an out-of-state party, *two* requirements must be met: (1) the forum state's long-arm statute must be complied with; and (2) there must be sufficient contacts with the forum state. See, e.g., *Frazer* v. *McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986); *Gaudio* v. *Gaudio,* 23 Conn. App. 287, 298, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). This case involves the first, not the second, requirement.

Sixth, the majority reads § 46b-46 to blur the distinction, long recognized in our law, between service of process and notice. Service of process is the method by which a complaint, or other legal document, is delivered to a party. 1 E. Stephenson, Connecticut Civil Procedure (1970) § 19. Service of process has two functions: conferring jurisdiction and giving notice. *Smith* v. *Smith,* 150 Conn. 15, 20, 183 A.2d 848 (1962). That does not mean, however, as the majority's reading of the statute suggests, that simply because there was notice there was also jurisdiction. Although one of the purposes of service of process is to give notice, in order for there to be personal jurisdiction there must have been substantial compliance with the statute defining the applicable method of service of process. See, e.g., *Tarnopol* v. *Connecticut Siting Council,* 212 Conn. 157, 163, 561 A.2d 931 (1989); *Hillcroft Partners* v. *Commission on Human Rights & Opportunities,* 205 Conn. 324, 326–27, 533 A.2d 852 (1987); cf. *Tolly* v. *Department of Human Resources,* 225 Conn. 13, 29, 621 A.2d 719 (1993). The majority has simply read that entire notion out of § 46b-46 in the case of an out-of-state domiciliary.

Seventh, the majority has read § 46b-46 (b) to create a mechanism for acquiring personal jurisdiction over a domiciliary of another state that does not appear in any other of our statutes providing for suing such persons. See, e.g., General Statutes §§ 52-59b (nonresidents and foreign partnerships), 52-59c (nonresident attaching creditor), 52-60 (judge of probate attorney for nonresident fiduciary), 52-61 (nonresident fiduciary), 52-62 (nonresident who negligently operates motor vehicle within the state), and 52-65 (nonresident in quo warranto case). In each of these situations, service is required on some officer within this state, such as the secretary of the state or a local probate judge, who then, in his official capacity, forwards the complaint to the defendant.[9] We should not read a statute such as § 46b-46 to create such an otherwise unheard of statutory mechanism without a clear indication that such was the legislative intent in its enactment. Despite the majority's seeking refuge in what it sees as the clear and unambiguous language of § 46b-46, there is no such clear indication of legislative intent in the statutory language. In fact, if § 46b-46 is read as a whole, the intent manifested is contrary to that conjured up by the majority.

---

[9] The only exception to this statutory scheme for substituted service in this state upon out-of-state parties is General Statutes § 52-57a, which provides: "SERVICE OF PROCESS WITHOUT STATE UPON PERSONS DOMICILED OR SUBJECT TO JURISDICTION OF COURTS IN STATE. A person *domiciled in or subject to the jurisdiction of the courts of this state* or his executor or administrator, may be served with process without the state, in the same manner as service is made within the state, by any person authorized to make service by the laws of the state, territory, possession or country in which service is to be made or by any duly qualified attorney, solicitor, barrister or equivalent in such jurisdiction." (Emphasis added.)

This statute does not apply to this case, however, because the defendant was not "domiciled in or subject to the jurisdiction of the courts of this state" before the service was made upon him. Furthermore, this statute, if anything, undercuts the majority's reading of General Statutes § 46b-46 (b) because it shows that the legislature knows how to permit out-of-state service by out-of-state officials when it intends to do so.

Eighth, the majority's reliance on *Smith* v. *Smith,* supra, is unjustified. *Smith* involved abode service of a divorce complaint on a Connecticut domiciliary who, two days before the service, had gone to New York City en route to Nevada, but who received actual notice of the action. Id., 17. The court noted specifically that "on the jurisdiction question we are concerned only with service, on a defendant domiciled in Connecticut, by leaving the process at his usual place of abode within that state." Id., 18.[10] The court held that this service of process was sufficient "to give the Connecticut court in personam jurisdiction." Id., 20. The court also rejected the defendant's claim that an order of notice under then General Statutes § 46-17, later § 46-39, and now § 46b-46 (a), was necessary, because in that case the abode service on the defendant Connecticut domiciliary had been sufficient. Id., 21. This is hardly authority for the proposition that § 46b-46 (b) permits a Connecticut domiciliary to secure personal jurisdiction over a Texas domiciliary by mailing a copy of the complaint to a Texas sheriff for service in Texas.

I therefore dissent.

---

[10] Thus, the majority's attempt to stretch *Smith* v. *Smith,* 150 Conn. 15, 183 A.2d 848 (1962), to fit the facts of this case; see footnote 7 of the majority opinion; ignores the court's own, appropriate limitation on the scope of its holding.