BARBARA JOAN THOMASON ET AL. *v.* CHEMICAL BANK
(15148)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and PALMER, Js.

Argued May 23—decision released July 18, 1995

*Peter M. Ryan*, with whom was *Robert M. McAner-ney*, for the appellants (plaintiffs).

*Edward A. Reilly*, with whom was *John Wayne Fox*, for the appellee (defendant).

PETERS, C. J. The sole issue in this appeal is whether a Connecticut court may exercise personal jurisdiction over the defendant in this action, which challenges the management of a trust by a trustee bank that is incorporated in, and has its principal place of business in, New York. The plaintiffs, Barbara Joan Thomason, Jeffrey Corbett, Marjorie Biddle, Peter Corbett, James Corbett, David Biddle III, Bridget Biddle, Peter Corbett, Jr., and Reilly Corbett, are the beneficiaries of a trust created by Arthur Trowbridge. In a seven count complaint, the plaintiffs alleged that the defendant, Chemical Bank (trustee bank), violated its trust obligations, was negligent, and engaged in fraud and deceit. The trustee bank filed a timely motion to dis-

miss for lack of personal jurisdiction. The trial court concluded that the plaintiffs' cause of action was not sufficiently connected to the trustee bank's activities in this state to establish long arm jurisdiction over the bank pursuant to General Statutes § 33-411 (c).[1] It therefore granted the motion to dismiss and rendered judgment for the trustee bank. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The record reveals the following undisputed facts. On September 15, 1941, the settlor, Arthur Trowbridge, entered into a trust agreement with the Fulton Trust Company, which was a predecessor of the trustee bank. The settlor created the trust for the benefit of his granddaughter, the named plaintiff, as life tenant, and her issue, the remaining plaintiffs, as remaindermen.

Although the settlor was a resident of Connecticut at the time the trust was established, the trust agreement was executed in New York and provided that it should be governed by New York law. The settlor also directed that all communications relative to the administration of the trust be addressed to him at his office in New York, rather than at his home in Darien.

---

[1] General Statutes § 33-411 provides in relevant part: "SERVICE OF PROCESS ON FOREIGN CORPORATION. . . .

"(c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how

Throughout the life of the trust, the assets of the trust have been held and administered in New York.

After the settlor's death, officers of the trustee bank held meetings in Connecticut concerning the trust on November 6, 1992, May 20, 1993, and September 10, 1993. Trustee bank officers also held meetings in Connecticut from October, 1981, to September, 1993, concerning other Trowbridge family trusts. At these meetings, the trustee bank was represented by a trust officer and an investment officer. The trustee bank represented that these meetings had been merely informational in nature.

The trustee bank is incorporated in New York, where it has its principal place of business. It has no offices in Connecticut. The trustee bank has, however, placed advertisements in national publications, including Business Week, the New York Times and the Wall Street Journal, that are distributed in this state. Those advertisements represented, inter alia, that the trustee bank was "number one for individuals and small and medium-sized businesses in New York, New Jersey and Connecticut, with 50% more branches than our nearest competitor." They also announced that the trustee bank had merged with the Manufacturers Hanover Trust Company and described the trustee bank as a "broad-based financial institution" that offered "depth and breadth of services."

In addition to its advertisements in this state, the trustee bank has participated, as mortgagee, in a substantial number of mortgage transactions in this state

---

or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

On January 1, 1997, this section of the General Statutes will be superseded by an identical provision contained in § 193 (e) of Public Acts 1994, No. 94-186, the Connecticut Business Corporation Act. See Public Acts 1994, No. 94-186, §§ 214 and 215.

and has issued credit cards to a substantial number of Connecticut residents. In connection with its credit card business, the trustee bank regularly has sent to Connecticut customers statements that included advertisements for miscellaneous merchandise. At the time the suit was filed, all of the plaintiffs were residents of Connecticut.

On the basis of this evidence, the trial court concluded that the Connecticut long arm statute did not confer jurisdiction over the case. The trial court first determined that the plaintiffs' cause of action did not "aris[e] . . . [o]ut of [a] contract . . . to be performed in this state"; General Statutes § 33-411 (c) (1); on the ground that a trust is a conveyance rather than a contract. The trial court further determined that the plaintiffs' cause of action did not "aris[e] . . . out of . . . business solicited in this state"; General Statutes § 33-411 (c) (2); because there was no connection between the trustee bank's solicitation of business in this state and the establishment of this particular trust by the settlor.

On appeal, the plaintiffs challenge both of the trial court's determinations. We conclude that the trial court misinterpreted the statutory phrase "arising . . . out of" and therefore construed § 33-411 (c) (2) too narrowly. Because the plaintiffs' cause of action adequately "aris[es] . . . out of . . . business solicited in this state" for purposes of our long arm statute, and because the exercise of personal jurisdiction over the trustee bank is consistent with the constitutional requirements of due process, we reverse the judgment of the trial court.[2]

I

The parties agree, as we have previously decided, that a trial court may exercise jurisdiction over a foreign

---

[2] In light of our disposition of the case, we need not address the plaintiffs' claim that the trust also should be deemed to be a "contract . . . to be performed in this state" pursuant to § 33-411 (c) (1).

defendant only if the defendant's intrastate activities meet the requirements both of our statute and of the due process clause of the federal constitution. *Frazer v. McGowan*, 198 Conn. 243, 252, 502 A.2d 905 (1986); *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983). The principal focus of this appeal is on the first requirement. Specifically, the parties disagree about the extent to which our statutory formulation of "arising . . . out of" imposes limitations on jurisdiction that are substantially greater than those that would be constitutionally required.

Our existing precedents have addressed, on a case-by-case basis, the question of whether a plaintiff's cause of action is sufficiently connected to "business solicited in this state" by a defendant to fall within the requirements of § 33-411 (c) (2). We have not, however, undertaken an analytic overview of the relationship between the statute and the constitution to determine how closely a cause of action must be tied to "business solicited in this state" before it may be deemed to "aris[e] . . . out of" that business for purposes of the statute.

Because the legislature's use of the "arising out of" language may reflect, to some extent, the use of similar language in the federal cases decided under the due process clause, it is important first to examine the federal constitutional background against which the statute was enacted. Read in light of that background, the decisions of this court, which have been ratified by recent legislative action, manifest the understanding that our statute uses the term "arising out of" in a manner that is distinguishable from its constitutional origins. We are persuaded, furthermore, that a cause of action may be said to "aris[e] . . . out of . . . business solicited in this state" pursuant to § 33-411 (c) (2) even if the "business" forming the basis of the cause of action—in this case, the settlor's trust account deposit—never was solicited in Connecticut.

## A

We begin our analysis of the "arising out of" language in § 33-411 (c) (2) by reviewing the constitutional framework in which the statute operates. For our purposes, the most significant aspect of the operative constitutional principles is that, although federal constitutional law distinguishes between causes of action that "arise out of" the defendant's forum-directed activities and cases that do not "arise out of" such activities, that distinction is not the constitutional touchstone for in personam jurisdiction. As a matter of federal constitutional law, state courts may exercise "specific" personal jurisdiction over a defendant whenever a cause of action "arises out of" the defendant's contacts with the forum. For the purposes of defining "specific" jurisdiction, federal courts have construed the words "arising out of" to require some sort of causal connection between the defendant's forum contacts and the plaintiff's injuries. Even when the plaintiff cannot prove such a causal connection, however, a state court still may exercise "general" jurisdiction over a defendant who has had sufficiently continuous and systematic overall business contacts with the state.

The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S. Ct. 154, 90 L. Ed. 95] (1945), quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 [61 S. Ct. 339, 85 L. Ed. 278] (1940)." (Internal quotation marks omitted.) *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).[3] Either "specific" jurisdiction

[3] If the nonresident defendant is an individual, a state court constitutionally may exercise jurisdiction over that defendant even if he or she does

or "general" jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum. A state court will have "specific" jurisdiction over a nonresident defendant whenever the defendant "has 'purposefully directed' [its] activities at residents of the forum, *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 774 [104 S. Ct. 1473, 79 L. Ed. 2d 790] (1984), and the litigation [has] result[ed] from alleged injuries that '*arise out of* or relate to' those activities, *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, [supra, 414]." (Emphasis added.) *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472–73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Alternatively, "[e]ven when the cause of action does *not arise out of* or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction" if the defendant has had "continuous and systematic general business contacts" with the state. (Emphasis added.) *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, supra, 414, 416.

In the context of "specific" jurisdiction, although the United States Supreme Court has required the plaintiff's cause of action to "arise out of or relate to" the defendant's forum-directed activities, that court has not articulated a standard for what constitutes "arising out of." See *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 589, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (declining to reach issue despite having certified it for review); *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, supra, 466 U.S. 415–16 n.10 (declining to reach question). That court has held only that the availability of specific jurisdiction depends on the " 'relation-

not have the "minimum contacts" with a state necessary for the exercise of long arm jurisdiction, if he or she is served with process while actually within the territory of the state. *Burnham* v. *Superior Court of California*, 495 U.S. 604, 618–19, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) (plurality opinion).

ship among the defendant, the forum, and the litigation' . . . ." *Helicopteros Nacionales de Colombia, S. A.* v. *Hall,* supra, 414; *Shaffer* v. *Heitner,* 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). The lower federal courts have held, however, that because of the requirement that the cause of action "arise out of" the defendant's contacts with the forum, specific jurisdiction may not be exercised without some causal connection between the defendant's contacts with the forum and the existence of the plaintiff's lawsuit. See, e.g., *Dobbs* v. *Chevron U.S.A., Inc.,* 39 F.3d 1064, 1068 (10th Cir. 1994); *United Electrical, Radio & Machine Workers of America* v. *163 Pleasant Street Corp.,* 960 F.2d 1080, 1088–89 and n.9 (1st Cir. 1992); *Sher* v. *Johnson,* 911 F.2d 1357, 1364 (9th Cir. 1990); see also note, "Specific Personal Jurisdiction and the 'Arise From or Relate To' Requirement . . . What Does It Mean?" 50 Wash. & Lee L. Rev. 1265 (1993) (arguing that federal courts have employed two different standards of causation: the "but-for" test and the "substantive relevance" test); M. Twitchell, "A Rejoinder to Professor Brilmayer," 101 Harv. L. Rev. 1465 (1988); L. Brilmayer, "Related Contacts and Personal Jurisdiction," 101 Harv. L. Rev. 1444 (1988); M. Twitchell, "The Myth of General Jurisdiction," 101 Harv. L. Rev. 610 (1988); L. Brilmayer, "How Contacts Count: Due Process Limitations on State Court Jurisdiction," 1980 Sup. Ct. Rev. 77.[4] By contrast, because general juris-

[4] Some courts have suggested, in dicta, that specific jurisdiction may be exercised without proof of a causal connection between the defendant's forum-directed activities and the lawsuit. All of those courts, however, have based their conclusion on the fact that the specific jurisdiction test merely requires that the cause of action "arise out of *or relate to*" the defendant's forum-directed activities. (Emphasis added.) See, e.g., *Helicopteros Nacionales de Colombia, S. A.* v. *Hall,* supra, 466 U.S. 426–27 (Brennan, J., dissenting) (reaching issue deferred by majority; arguing that court should distinguish between "arising out of" and "relating to" requirements); *Ticketmaster-New York, Inc.* v. *Alioto,* 26 F.3d 201, 206–207 (1st Cir. 1994) (discussing distinction without employing it); cf. L. Brilmayer, supra, 101 Harv. L. Rev. 1444 (criticizing such distinction). Thus, even if the constitu-

diction does not require that the cause of action "arise out of" a defendant's activities, such jurisdiction may be exercised even when there is no causal connection between the defendant's forum-directed activities and the plaintiff's lawsuit, as long as the defendant has had "continuous and systematic general business contacts" with the state. (Emphasis added.) *Helicopteros Nacionales de Colombia, S. A.* v. *Hall,* supra, 415–16.

B

Like the constitutional test that differentiates "specific" from "general" jurisdiction, § 33-411 distinguishes between cases that "arise out of" a defendant's forum contacts and cases that do not arise out of such contacts. Unlike the constitution, however, our long arm statute permits the exercise of jurisdiction over only those cases that "arise out of" a defendant's forum contacts.[5] If the words "arising out of" in the statute had the same meaning as those words in the constitutional test, the statute would limit our courts to the exercise of "specific" jurisdiction and prohibit our courts from exercising any "general" jurisdiction. On the basis of our precedents and confirmatory legislative history, however, we are persuaded that the statute does not entirely preclude the exercise of "general" jurisdiction and that the phrase "arising out of" in the statute, unlike that phrase in the constitutional test, does not require a causal connection between the defendant's forum-directed activities and the plaintiffs' lawsuit.

tional test for specific jurisdiction does not require a causal connection between the defendant's contacts with the forum and the lawsuit, it is only because that test contains not only the "arising out of" language, but also the "relating to" language. If the constitutional test employed only the "arising out of" language, a causal connection would be required.

[5] All aspects of our long arm statute restrict the exercise of jurisdiction to cases that "arise out of" a defendant's forum contacts. For example, § 33-411 (b) provides that "[e]very foreign corporation which transacts business in this state in violation of section 33-395 or 33-396 shall be subject to suit in this state upon any cause of action *arising out of* such business." (Emphasis added.) See also General Statutes § 33-411 (c).

Our previous cases interpreting § 33-411 (c) foreclose the argument that the statute permits only "specific," but not "general," jurisdiction. In *Frazer* v. *McGowan,* supra, 198 Conn. 249, for example, we concluded that the trial court, which had refused to exercise jurisdiction pursuant to the analogue of § 33-411 (c) (2), had been "mistaken in requiring a causal connection between evidence of solicitation and the plaintiff's cause of action." We further held that § 33-411 (c) directs us to inquire "not only into the various elements of the plaintiff's cause of action, spelled out in the various subparts of subsection (c), but also into the totality of contacts which the defendant may have with the forum. . . . [I]n enacting § 33-411 (c) . . . the legislature intended to exercise its full constitutional power over foreign corporations in cases falling within one of the designated causes of action. Under [§ 33-411 (c)], consistent with the constitutional demands of due process, it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." (Internal quotation marks omitted.) Id., 248–49; accord *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 190 Conn. 254–55. Our reference to contacts unrelated to the particular cause of action would have relevance only if the statute permits the exercise not only of "specific" jurisdiction, but also of "general" jurisdiction.[6]

---

[6] The same precedents preclude the inference that the legislature used the words "arising out of" in order to distinguish, for purposes of the constitutional test for specific jurisdiction, between cases that "arise out of" a defendant's contacts and cases that merely "relate to" those contacts. See footnote 4. If the phrases have different purposes in the constitutional test, it is apparently because the "arising out of" phrase requires a causal connection between the lawsuit and the defendant's contacts with the forum, but the "relating to" phrase does not require such a causal connection. See footnote 4. As already noted, however, our statute does not require a causal connection between the lawsuit and the defendant's forum-directed activi-

These precedents establish, therefore, that the words "arising out of" have different meanings in the statutory and constitutional contexts. Although § 33-411 (c) (2) requires that the cause of action "arise out of" a defendant's contacts with this state, it does not require that the cause of action and the contacts be causally connected. In this case, therefore, the statute permits the exercise of jurisdiction even if the trustee bank's solicitation in this state was neither the but-for cause nor the proximate cause of the plaintiffs' injuries. Cf. *Doe* v. *Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989) (discussing elements of causation).

We find additional support for this interpretation of the statute in recent actions of the legislature. In 1994, the General Assembly reenacted § 33-411 (c) as part of a comprehensive revision of our corporations statutes designed to bring those statutes into conformity with the Model Business Corporation Act (Rev. to 1985). See Model Business Corporation Act Task Force, Connecticut Business Corporation Act Final Working Draft (March 3, 1994). In response, however, to a comment by the secretary of the state that the long arm provision contained in the Model Act was too "narrow" and that the language of § 33-411 (c) should be substituted for it, the legislature specifically incorporated the language of § 33-411 (c) into the new act. See Public Acts 1994, No. 94-186, § 193 (e); Model Business Corporation Act Task Force, supra, § 15.10 (e) and Connecticut Commentary; Joint Standing Committee Hearings, Judiciary, Pt. 6, 1994 Sess., p. 2042, para. 37 (comments by office of secretary of the state); compare Substitute House Bill No. 5712, 1994 Sess., § 193 (e) with House Bill No. 5712, 1994 Sess., §§ 190, 192, 193. Our broad statutory interpretation therefore is sup-

---

ties. Thus, the use of "arising out of" in our statute cannot have been intended to limit our courts to exercising only a portion of otherwise permissible specific jurisdiction.

ported by both our presumption that the legislature is aware of our previous statutory interpretations when it reenacts a statute; *C. R. Klewin, Inc.* v. *Flagship Properties, Inc.*, 220 Conn. 569, 579, 600 A.2d 772 (1991); *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 626–27, 594 A.2d 464 (1991); *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 134, 527 A.2d 672 (1987); *Turner* v. *Scanlon*, 146 Conn. 149, 156, 148 A.2d 334 (1959); and the express action of the legislature in rejecting a narrower long arm provision. See also *Cato* v. *Cato*, 226 Conn. 1, 5, 626 A.2d 734 (1993) (interpreting long arm statute regarding actions for dissolution of marriage broadly to effectuate legislative intent).

## C

A comprehensive analysis of § 33-411 (c) (2) must, however, go further than demonstrating that the legislature did not intend to limit the jurisdiction of our state courts only to those cases in which the plaintiff's cause of action has a direct causal relationship to the defendant's contact points with this state. Our precedents make clear that "arising out of" in the statute does not mean the same thing as the "arising out of" in the federal constitutional test for "specific" jurisdiction. Our precedents also establish, however, that the legislature did not intend to authorize Connecticut courts to exercise the full measure of "general" jurisdiction that would have been constitutionally permissible. It is this latter limitation that we now address.

If the legislature had meant to allow our courts to exercise the full extent of constitutionally permissible long arm jurisdiction, it could have done so explicitly. The California long arm statute, for example, provides simply that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ.

Proc. Code § 410.10 (Deering 1991). Other states have followed the California example. See, e.g., Ill. Ann. Stat. c. 735 § 5/2-209 (c) (Smith-Hurd 1992); R.I. Gen. Laws § 9-5-33 (a) (1985); Wyo. Stat. § 5-1-107 (a) (1992). In comparison, our legislature chose to enact and then to reenact a detailed statute spelling out the various categories of cases out of which the cause of action had to "arise" before long arm jurisdiction could be exercised. In the absence of any contrary legislative history, we must assume that these enumerated requirements are purposeful.[7] See *Kaeser* v. *Zoning Board of Appeals*, 218 Conn. 438, 442–43, 589 A.2d 1229 (1991); *White* v. *Burns*, 213 Conn. 307, 320, 567 A.2d 1195 (1990); *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 98, 491 A.2d 368 (1985); see also 1 R. Casad, Jurisdiction in Civil Actions (2d Ed. 1991) § 4.01[1][b] (arguing that state legislatures' use of "arising out of" language should be viewed as choice not to grant jurisdiction to full extent permissible under constitution).

---

[7] The legislative history on this point is not particularly helpful. Section 33-411 (c) originally was enacted in 1959 as part of the comprehensive revisions to the corporations code. Almost all of the other corporations code revisions enacted at that time, including the language in § 33-411 (a) and (e), were taken from recommendations made by a special legislative task force. See Connecticut Commission on Revision of the Corporation Laws, Proposed Revision of Stock and Foreign Corporation Laws (1958) § J-9. The language now contained in § 33-411 (c), however, did not appear in the commission's recommendations. See id. We have been unable to determine how that language came to be incorporated in the bill introduced into the legislature; Substitute Senate Bill No. 329, 1959 Sess., § 131; that eventually was enacted. Furthermore, we have been unable to locate any committee testimony or floor debate that sheds light on the 1959 legislative intent in using the "arising out of" language.

The 1994 legislative history demonstrates that the legislature reenacted the language of § 33-411 (c) because it believed the long arm provision of the Model Business Corporation Act to be too narrow. See part I B of this opinion. We have been unable to locate any committee testimony or floor debate, however, that specifically discusses the meaning of the "arising out of" language or discusses whether the language of § 33-411 (c) reached the full extent of constitutionally permissible jurisdiction.

Our precedents have interpreted the words "arising out of" in § 33-411 (c) (2) as imposing some constraints on the exercise of jurisdiction that exceed those constraints imposed by the constitution. In *Frazer* v. *McGowan,* supra, 198 Conn. 248–49, for example, we observed that "in enacting § 33-411 (c) . . . the legislature intended to exercise its full constitutional power over foreign corporations *in cases falling within one of the designated causes of action.*" (Emphasis added.) We concluded, in that case, that the plaintiff's cause of action had met the statutory requirement because there had been an "adequate connection" between the cause of action and the solicitation of business here. Id., 252.[8] Most importantly, we always have held that the exercise of long arm jurisdiction in this state requires a two part inquiry: first, whether jurisdiction is permitted by the statute, and second, whether jurisdiction is permitted by the federal constitution. See, e.g., id., 252; *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 190 Conn. 250. If the statute allowed the exercise of all constitutionally permissible jurisdiction, the first step of this inquiry would not have been necessary. Cf. *Cato* v. *Cato,* supra, 226 Conn. 5 (long arm statute for dissolution actions reaches full

---

[8] In *Frazer* v. *McGowan,* supra, 198 Conn. 251, we concluded that the defendant hospital, which was located in Rhode Island, had "solicited business" in Connecticut in that it had granted admitting privileges to physicians, including the plaintiff's physician, who were licensed to practice in Connecticut. We further concluded that the plaintiff's cause of action had "arisen" from business solicited in Connecticut on the basis of the following analysis: "The named plaintiff's cause of action in this case arose from repeated solicitation conducted by [the defendant] Hospital through the use of such a network. [The named plaintiff's doctor] treated the named plaintiff in Connecticut and arranged for him to enter [the defendant] Hospital by exercising his admitting privileges there. It was during this hospitalization that the allegedly tortious conduct that forms the basis for the plaintiffs' suit occurred. The hospital was aware that the named plaintiff's doctor maintained offices in Connecticut. Indeed, it appointed him to its medical staff only after he had received his license to practice medicine in this state." Id., 252.

extent of constitutionally permissible jurisdiction; consolidating statutory and constitutional analysis into single step); *Jones* v. *Jones*, 199 Conn. 287, 292, 507 A.2d 88 (1986) (same).

The words "arising out of" therefore must be interpreted in a manner that reconciles the legislative decision to impose some limits on constitutionally permitted jurisdiction with its decision not to require a causal connection between the defendant's solicitation here and the plaintiffs' lawsuit. Our interpretation is as follows. For purposes of § 33-411 (c) (2), a plaintiff's "cause of action aris[es] . . . out of . . . business solicited in this state" if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs.

Pursuant to our interpretation of the statute, a plaintiff need not show that, because of the acts of solicitation, the defendant was on notice that it might be sued by the plaintiff himself or herself. A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut. A plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation.

This interpretation of the statute is consistent with both of the principles we have discussed. On the one hand, because the statute does not demand proof that a particular plaintiff's business was solicited in Connecticut, the statute does not require proof of a "causal connection" between the solicitation and the plaintiff's injuries. On the other hand, because the statute does

demand proof that a particular plaintiff's cause of action is similar to a cause of action that could have been brought here by a person whose business the defendant did solicit, the statute is more restrictive than the federal constitutional test for general jurisdiction, under which this state could have elected to exercise jurisdiction over causes of action wholly unrelated to the defendant's conduct in this forum.

## II

We now apply the relevant statutory and constitutional tests to the facts of this case. We conclude that both the statute and the constitution permit the exercise of long arm jurisdiction over the trustee bank, and we therefore reverse the judgment of the trial court.

## A

Section 33-411 (c) provides that "[e]very foreign corporation shall be subject to suit in this state, by a resident of this state . . . on any cause of action arising . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business . . . ." As discussed above, for purposes of the statute, the plaintiffs' cause of action "aris[es] . . . out of" the business solicited in this state as long as the trustee bank reasonably could have foreseen at the time of its solicitations here that it might be sued by a solicited person on a cause of action similar to that brought by the plaintiffs. The record in this case establishes both that the cause of action "aris[es] . . . out of" business solicited here, as we have defined that term, and that the corporation repeatedly has so solicited business.

The following undisputed facts of record satisfy the statutory requirement that the cause of action "arise[s] . . . out of . . . business solicited in this state . . . ." The trustee bank placed numerous print advertise-

ments in newspapers and magazines that had substantial circulations in this state. The advertisements specifically encouraged Connecticut residents to place a wide variety of banking business with the trustee bank. For example, the advertisements represented that the bank had merged with the Manufacturers Hanover Trust Company, that the bank was the "number one bank" for Connecticut businesses and individuals, and that the bank was a "broad-based financial institution." At the time the trustee bank placed the advertisements, therefore, it was foreseeable that one or more Connecticut residents would respond to the advertisements by opening a trust account with the trustee bank and thereafter would sue in Connecticut for the misadministration of that trust. Because the plaintiffs' cause of action is similar to one that foreseeably could have been brought as a result of the trustee bank's solicitation here, the plaintiffs' cause of action adequately satisfies the statutory "arising out of" test.

Moreover, the trustee bank "repeatedly so solicited business" in this state. In addition to the advertisements directed here, the bank has performed a substantial number of mortgage transactions in this state and has a large credit card business here. Like the activities of the defendant hospital in *Frazer*, the trustee bank's activities can be characterized as "affirmative measures designed to attract Connecticut" customers in that they constitute the creation of "an organizational network that is likely to prompt a significant number of Connecticut" residents to place business with the bank. *Frazer* v. *McGowan*, supra, 198 Conn. 251, 251–52. The trustee bank reasonably could foresee that, by advertising here, providing credit cards and taking mortgages from Connecticut residents, it would develop customer relationships that would lead to a wide range of banking business with those customers. See id.

It is of no moment that the trustee bank's acts of solicitation in Connecticut substantially postdate the creation of the particular trust that is the subject of this lawsuit. The relevant inquiry under the statute is not whether the trustee bank could have foreseen its amenability to suit in Connecticut by the plaintiffs when it accepted the settlor's business, but whether it could have foreseen its amenability to suit in Connecticut by persons raising claims similar to those of the plaintiffs when it solicited those persons' business in Connecticut. Jurisdiction may be exercised pursuant to § 33-411 even though the defendant was not reasonably able to foresee the exercise of such jurisdiction at the time that it engaged in the activities that make it subject to the statute. See *Carvette* v. *Marion Power Shovel Co.*, 157 Conn. 92, 98, 249 A.2d 58 (1968) (approving exercise of long arm jurisdiction pursuant to § 33-411 even though acts of defendant that made it subject to statute had occurred before statute was enacted).

B

"Once it is determined that there is an adequate connection between the [defendant's] act of solicitation and the plaintiff's cause of action to satisfy the requirements of § [33-411] (c) (2), the long-arm statute authorizes the exercise of jurisdiction if such an exercise comports with the principles of due process." *Frazer* v. *McGowan*, supra, 198 Conn. 252. On the facts of record in this case, we are persuaded that the trial court constitutionally may exercise general jurisdiction over the trustee bank.[9]

[9] In light of our disposition of this case, we need not decide whether the trustee bank "has 'purposefully directed' [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that 'arise out of or relate to' those activities"; *Burger King Corp.* v. *Rudzewicz*, supra, 471 U.S. 472; such that the trial court also may exercise specific jurisdiction over the case. Cf. id., 478 (upholding exercise of specific jurisdiction over foreign franchisee of franchisor located in forum); *Calder* v.

Although the trustee bank has no offices in this state, it conducts a substantial credit card business here, regularly solicits general banking business here and holds title (as mortgagee) to a substantial amount of real property in Fairfield county. By virtue of these activities, the trustee bank "has been carrying on in [Connecticut] a continuous and systematic, but limited, part of its general business";[10] *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S. Ct. 413, 96 L. Ed. 485 (1952); and the exercise of general jurisdiction over the trustee bank is therefore both "reasonable and just." Id., 445, 447–48 (general jurisdiction may be exercised over corporation whose president performed multiple business activities in Ohio); see also L. Brilmayer, J. Haverkamp, B. Logan, L. Lynch, S. Neuwirth & J. O'Brien, "A General Look at General Jurisdiction," 66 Tex. L. Rev. 723, 741–48 (1988); cf. *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, supra, 466 U.S. 416–17 (no general jurisdiction over foreign corporation that had merely purchased goods and services in forum and received check drawn on bank in forum).

---

*Jones*, 465 U.S. 783, 789–90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) (upholding exercise of specific jurisdiction over foreign newspaper reporter and editor whose defamatory publication had been aimed at forum); *Hanson* v. *Denckla*, 357 U.S. 235, 252, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (reversing exercise of specific jurisdiction over foreign corporate trustee that had performed no acts in forum that were sufficiently connected to plaintiff's injuries); *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 222–23, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957) (upholding exercise of specific jurisdiction over foreign insurance company that had solicited insurance policy in forum).

[10] We reach this determination without deciding whether the trustee bank could be deemed to be "transacting business" in this state pursuant to General Statutes §§ 33-396, 33-397 and 33-411 (b). See *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437, 445, 72 S. Ct. 413, 96 L. Ed. 485 (1952) (foreign corporation may have continuous and systematic business contacts with forum for purposes of constitutional test even if, under state statute, those contacts do not constitute transacting business under state law).

In sum, we conclude that § 33-411 permits, and that the due process clause does not preclude, the exercise of long arm jurisdiction over the trustee bank.

The judgment of the trial court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.