[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS TO DISMISS OF DEFENDANT CAPPSEALS. INC. FOR LACK OF PERSONAL JURISDICTION
The plaintiffs, David and Marie Goldstein of Westport, Connecticut originally brought this products liability/loss of consortium action by a complaint dated January 31, 1996. In their original complaint, the plaintiffs alleged that in October of 1993, David Goldstein sustained certain serious physical injuries when he ingested a nutritional supplement known as PB 8, and that thereafter, as a result of those injuries, he and his wife, Marie Goldstein, suffered several additional injuries and losses. Named as defendants in the original complaint were Nutrition Now, Inc. ("Nutrition Now"), a Delaware corporation with its principal place of business in Vancouver, Washington, American Type Culture Collection, Inc., a Washington, D.C. corporation with its principal place of business in Rockville, Maryland, and Food For Thought Natural Foods Market, inc. ("Food For Thought"), a Connecticut corporation with its principal place of business in Westport, Connecticut. The plaintiffs alleged, inter alia: that Nutrition Now designed, prepared, assembled, tested, packaged, labeled, advertised, marketed and sold the PB 8 capsules that injured Mr. Goldstein; that American Type Culture Collection designed, prepared, assembled, tested, packaged, labeled, advertised, marketed and sold certain bacterial cultures that were used by Nutrition Now as component parts of its PB 8 product; and that Food For Thought made the final retail sale of the particular PB 8 capsules that injured Mr. Goldstein.
Thereafter, Food For Thought filed a so-called "apportionment complaint," under the purported authority of Public Act 95-ill and General Statutes § 52-572o, against several additional "apportionment defendants," all of which had allegedly participated or sold and supplied ingredients used in the manufacture of PB 8. The new defendants were Cappseals, Inc., a Washington corporation with its sole place of business in Vancouver, Washington, which allegedly put the ingredients for PB 8 into capsules and packaged the capsules in sealed containers for retail sale, Forage Research, Inc. d/b/a Star Labs, Inc. ("Forage Research"),[1] a Missouri corporation with its principal place of business in Clarksdale, Missouri, which CT Page 10210 allegedly sold a bacterial product known as ProBiotic Supplement that was used as a component of PB 8, and Stauber Chemical, Inc. ("Stauber"),[2] a California corporation with its principal place of business in Brea, California, which allegedly sold certain other bacterial products that were also used as components of PB 8.
The plaintiffs then pled over against the apportionment defendants, bringing direct claims for damages against each of them in an Amended Complaint dated August 27. 1997. Thereafter, Stauber filed a third-party complaint against Test Labs, Inc. d/b/a Brewster Foods ("Brewster Foods" or "Brewster"), a California corporation with its principal place of business in Reseda, California, claiming that Brewster had supplied the PB 8 components it had sold to Nutrition Now. Nutrition Now then followed Stauber's lead by filing a cross-claim, based on similar allegations, against Brewster Foods. Brewster Foods then filed a fourth-party complaint against Wellington Foods, Inc. ("Wellington"), a California corporation with its principal place of business in Long Beach, California, claiming that Wellington had been the source of the product it had supplied to Nutrition Now. Finally, Stauber amended its third-party complaint against Brewster to add its own separate claim against Wellington based on the allegations of Brewster's fourth-party complaint.
The case is now before the Court for decision on motions to dismiss for lack of personal jurisdiction filed by defendant Cappseals.[3]
 I
In order to assert personal jurisdiction over a foreign corporation, a court must determine that two conditions are met. First, there must be a jurisdictional statute that reaches the conduct of the defendant. Fuehrer v. Owens-Corning FiberglassCorp. , 673 F. Sup. 1150, 1153 (D.Conn. 1986). Second, even where a statute purports to grant jurisdiction, the exercise of that jurisdiction under the circumstances presented must not exceed constitutional due process limitations, which require that the defendant have "minimum contacts" with the state sufficient that it would reasonably anticipate being haled into court there. Id. at 1153.
When a motion to dismiss for lack of personal jurisdiction raises a factual question that cannot be decided on the face of CT Page 10211 the record, the burden of proof is on the plaintiffs to present evidence which will establish jurisdiction. Standard Tallow Corp.v. Jowdy, 190 Conn. 48, 54, 459 A.2d 503 (1983). To meet this burden, the plaintiffs must do more than merely rely on conclusory allegations in their complaint. Instead, they must make at least a prima facie showing of jurisdiction through their own affidavits or supporting materials. Fuehrer v. Owens-CorningFiberglass Corp. , supra, 673 F. Supp. at 1153. A decision to grant a motion to dismiss may appropriately be based upon uncontroverted affidavits or materials from the party seeking dismissal. Id.
 II
In Connecticut, jurisdiction over a foreign corporation must be predicated upon General Statutes § 33-929(f),[4] which provides in part as follows:
 (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers[.]
To establish this Court's jurisdiction over Cappseals, the plaintiffs must first make a prima facie showing that its challenged actions bring it within the scope of Section 33-929
(f).
The defendant here contends that no such showing can be made against it in light of the facts revealed in the sworn affidavit of its President, Russell White. In articular, Mr. White avers: (1) that Cappseals is a Washington corporation with its one and only place of business in the State of Washington; (2) that all of Cappseals' work in the manufacturing of PB 8 was performed in Vancouver, Washington; (3) that Cappseals' only role in the manufacture of PB 8 was to put ingredients supplied by Nutrition CT Page 10212 Now into capsules, then to package the capsules in sealed containers for distribution and sale; (4) that at no time while performing its work as the encapsulator or packager of PB 8 did Cappseals learn where Nutrition Now would sell the product when it was ready for market; and more particularly, (5) that at no time in that period did Cappseals learn that any of the subject product would be sold or distributed in the State of Connecticut. Against this background, argues Cappseals, it cannot reasonably be found to have had a "reasonable expectation," essential to the establishment of jurisdiction under Section 33 929(f), that the product in question was to be used or consumed in Connecticut.
In response to this argument, the plaintiffs first remind the Court, quite correctly, that under binding Connecticut Supreme Court precedent, "the phrase "arising out of in [Section 33-929
(f)] . . . does not require a causal connection between the defendant's forum-directed activities and the plaintiffs' lawsuit." Thomason v. Chemical Bank, 234 Conn. 281, 295,661 A.2d 595 (1995). Accordingly, they rightly argue, all of the defendant's activities, including those that may not have been specifically related to the plaintiffs' cause of action, are relevant to the Court's jurisdictional analysis.
Notwithstanding the foregoing reminder as to the permissible breadth of the Court's jurisdictional inquiry under Section33-929 (f), the plaintiffs have made a strong but exceptionally narrow showing as to why such statutory jurisdiction is established here. The central focus of this showing is the close business relationship between Cappseals and Nutrition Now, its neighbor in the same industrial complex in Vancouver, Washington. Cappseals encapsulates and packages many different products for Nutrition Now. In fact, in the relevant time frame, it was Nutrition Now's only packager and encapsulator of PB 8. The corporate officers of Cappseals and Nutrition Now have long been friendly with one another, frequently meeting to discuss their work. Among other things, their discussions have included references to distributors through which Nutrition Now sells the products packaged and encapsulated for it by Cappseals.
The Nutrition Now product here at issue was to be sold and distributed through General Nutrition Center ("GNC"), a nationwide chain of retail stores which was one of Nutrition Now's major customers for its probiotic products. Nutrition Now President Martin Rifkin testified at his deposition that he and Mr. White of Cappseals had specifically discussed his company's CT Page 10213 sale of probiotic products through GNC, and Mr. White himself acknowledged his awareness of that distribution arrangement. Rifkin deposition, pp. 99-100; White deposition, pp. 93-94. Indeed, Mr. White's awareness of Nutrition Now's chain of distribution is conclusively established by the contents of the labels affixed to bottles of PB 8 sealed by Cappseals. The labels made explicit reference to GNC, eliminating any doubt as to where and by whom the bottles would be sold.
What is significant, for present purposes, about Mr. White's awareness of Nutrition Now's plans to distribute its probiotic products, including PB 8, through GNC, is his particular awareness of that distributor's national scope. "I know," said White at his deposition, "they have warehouses throughout the country." White deposition, p. 74. Indeed they do. In fact, there are over 2,000 General Nutrition stores owned by the GNC throughout the United States. Whether or not Mess'rs White and Rifkin ever specifically discussed the likely sale of PB 8 or any other product in Connecticut, the Court concludes that Mr. White, and through him Cappseals, had a "reasonable expectation" that that very product was to be used or consumed all over the country, including in Connecticut. Therefore, since the plaintiffs have made a prima facie showing that PB 8 was actually sold and used in Connecticut, and this case involves a cause of action arising out of just such a reasonably expected sale and use, this Court finds that the defendant's alleged conduct brings it well within the statutory reach of Section 33-929(f).
 III
Defendant Cappseals' fall-back argument is that even if this Court finds, as it has, that the plaintiffs have established statutory jurisdiction under General Statutes § 33-929 (f), the record does not support a finding that it has sufficient "minimum contacts" with Connecticut to satisfy due process standards. For the reasons that follow, the Court agrees that such minimum contacts have not been established, and thus concludes that all claims against Cappseals must be dismissed for lack of personal jurisdiction.
"A state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts' between the defendant and the forum state." WorldWideVolkswagen Corp. V. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559,62 L.Ed.2d 490 (1980). The contacts must be such that "maintenance CT Page 10214 of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington,326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945).
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness."United States Trust Co. v. Bohart, 197 Conn. 34, 41,495 A.2d 1034 (1925). "The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." Id. at 42.
"It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v.Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528
(1985). However, "jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. . . . So long as a commercial actor's efforts are "purposefully directed' toward residents of another State, [our Supreme Court has] . . . consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Id. at 476.
"Either `specific' jurisdiction or "general' jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum." Thomason v.Chemical Bank, supra, 234 Conn. at 288. A State can exercise "specific jurisdiction" over a defendant when the suit in question arises out of or relates to the defendant's contacts with the forum. Helicopteros Nacionales de Columbia. S.A. v.Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A State can exercise "general jurisdiction" over a defendant when, though the suit in question does not arise out of or relate to the defendant's contacts with the forum, such contacts are "continuous and systematic." Id. at 414, 416.
In this case, the plaintiffs concede that this Court has no basis for exercising general jurisdiction over defendant Capp seals. Indeed, as the uncontroverted affidavit of Russell White clearly demonstrates, Cappseals' contacts with the State of Connecticut have been virtually nonexistent, and can certainly not be described as "continuous and systematic."[5]
On the record before this Court, Cappseals' only contact with this State has been its participation in the encapsulation and CT Page 10215 packaging of PB 8 with what this, Court has found to be an awareness that that product would be placed in the national stream of commerce through GNC, and thus would be sold and used in Connecticut. The question here presented is thus whether, by so doing, defendant Cappseals can be found to have so "`purposefully directed' [its commercial efforts] toward residents of [this] State," Burger King Corp. v. Rudzewicz, supra, 471 U.S. at 476, as to subject it to the jurisdiction of this Court.
Prior to 1987, the United States District Court for the District of Connecticut observed that, "After World-WideVolkswagen[, supra], the courts which have sustained jurisdiction on the basis of a defendant's expectation that its goods would enter the forum state have done so in cases involving specific evidence that the defendant knew or should have known that its goods would be entering the forum jurisdiction." Shaw v.American Cyanamid Co., 534 F. Sup. 527, 531 (D. Conn. 1982). Relying, inter alia, on this precedent and others of similar vintage, the plaintiffs here argue that this Court should reject the defendant's challenge to jurisdiction because it knew or should have known that the product that allegedly injured Mr. Goldstein would reach all fifty states, including Connecticut. The plaintiffs argue that since Cappseals made no effort to ensure that its nationally distributed product would not be sold in Connecticut, it should be found to have "purposefully availed itself of the privilege of conducting activities within the [State of Connecticut,] thus invoking the benefits and protections of its laws," Burger King Corp. v. Rudzewicz, supra,471 U.S. at 476, and subjecting itself to the jurisdiction of its courts.
In resisting the foregoing argument, the defendant relies principally upon the plurality opinion of the United States Supreme Court in Asahi Metal Industry Co. v. Superior Court,480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In that opinion, which the courts of several federal circuits, including the Second Circuit, have since accepted as a binding statement of federal constitutional law,[6] Justice O'Connor flatly rejected a virtually identical argument in the following terms: "[T]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. . . . [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Id. at CT Page 10216 112. Here, claims the defendant, the only possible basis for asserting personal jurisdiction over it is its asserted awareness, while encapsulating and packaging the probiotic product here at issue, that the product in question would be placed into the national stream of commerce, and by that route be swept into Connecticut. Absent any other contacts between itself and the State of Connecticut, Cappseals asserts such acts and awareness, without more, are plainly inadequate to establish jurisdiction under Asahi.
The procedural posture of Asahi is remarkably similar to that of this case. There, when the American victim of a California motorcycle accident brought suit in a California state court against Cheng Shin, the Taiwanese manufacturer of the motorcycle's allegedly defective tire, Chen Shin brought an indemnification against Asahi as the alleged supplier of the part that caused the tire to fail. Cheng Shin had manufactured the tire in Taiwan using a tire valve assembly made by Asahi in Japan. Though Asahi was aware that Cheng Shin tires incorporating its assemblies would be sold in California, the Supreme Court held that it had not, by selling those assemblies to Cheng Shin with such an awareness, purposefully directed its activities toward the State of California.
In reaching that conclusion, Justice O'Connor searched the record in vain for other indications that Asahi had so directed its commercial activities toward California as to bring itself constitutionally within the jurisdiction of California's courts. On this score, she sought to determine if, for example, there were evidence that Asahi had done business in the State of California, that it had an office, agents, employees or property in California, that it had designed its assemblies to serve the particular market in California, that it had advertised its products in California, that it had established channels for providing regular advice to its customers in California, that it had marketed its products through a distributor who had agreed to serve as its sales agent in California, and/or that it had created, controlled or employed the distribution system that brought the allegedly defective product into California. Id. Satisfying itself that no such additional contacts had been established, the plurality ruled that Asahi had insufficient contacts with California to warrant subjecting it to the jurisdiction of a California court.
In light of the facts established by the affidavit of Russell CT Page 10217 White, defendant Cappseals has no more contacts with the Connecticut than Asahi had with California. Because, at most, it placed a product into the stream of commerce with the awareness that the stream of commerce would sweep that product into Connecticut, and such conduct, without more, does not constitute "an act purposefully directed toward the forum State[,]" id. at 112, the defendant's motions to dismiss for lack of personal jurisdiction must be granted.
It is so ordered this 22nd day of July, 1999.
Michael R. Sheldon