SANCHEZ

v.

CORONA et al.

No. 3:02 CV 1666 JBA.

United States District Court,
D. Connecticut.

Aug. 29, 2003.

Gerardo Sanchez, Brookfield, CT, Pro se.

Peter E. Fleming, III, Curtis, Mallet–Prevost, Colt & Mosle, Stamford, CT, for Defendants.

### *Ruling on Defendants' Motion to Dismiss [Doc. # 69]*

ARTERTON, District Judge.

Plaintiff Gerardo Sanchez commenced this action by complaint filed September 18, 2002. After his original complaint was dismissed for lack of subject matter jurisdiction,[1] Sanchez filed a Third Amended Complaint [Doc. # 60] naming Manuel Corona and Banco Bilbao Vizcaya Argentaria S.A. ("BBVA") as defendants. Defendants have moved to dismiss the case for lack of personal jurisdiction. Plaintiff took discovery on the issue of personal jurisdiction, and has filed an opposition asserting what he believes to be a factual basis for the exercise of personal jurisdiction over each defendant. For the reasons set out below, an adequate basis has not been shown and the case must therefore be dismissed for lack of personal jurisdiction.

I. Background

Sanchez's complaint alleges that in Spain in 1988 he was defrauded by BBVA, Third Am. Compl. [Doc. # 59] ¶ 1, and to obtain redress he commenced suit against BBVA in the United States District Court for the Southern District of New York in 1992, *id.* ¶ 15. BBVA moved to dismiss the New York proceedings for *forum non conveniens,* and submitted in support of that motion a declaration from Corona. *Id.* ¶ 16. The New York court granted the motion, and the case was dismissed. *Id.* ¶ 21.[2] Sanchez's complaint in this action

---

1. The claimed basis of jurisdiction was diversity of citizenship, but one of the original named defendants shared plaintiff's Connecticut citizenship. *See* Ruling on Pending Motions [Doc. # 58] at 1–3. This defendant was omitted from the Third Amended Complaint.

2. After the New York *forum non conveniens* dismissal was affirmed by the Second Circuit, Sanchez filed a motion under Fed.R.Civ.P. 60(b) to re-open the matter, which was denied. The New York court denied Sanchez's motion, and the denial was affirmed by the Second Circuit.

asserts that the Corona declaration was false and that the New York action should not have been dismissed. *See* Mem. Opp. [Doc. # 108] at 2 (describing complaint as alleging: (1) that BBVA "conceal[ed] vital documents that contained incriminating evidence against the bank" and "deliberately submit[ted] Declarations full of misrepresentations," thereby "instigating an injudicious outcome at a prior action at the Southern District of New York based in part on false facts"; and (2) that Corona prepared a false declaration which "significantly impacted [the New York judge's] decision to rule in favor of [BBVA]").

Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(2). In support of their motion, they attach a declaration by defendant Corona and an affidavit from Ernesto Anton, Legal Risk Manager at the U.S. office of defendant BBVA. Corona declares that he is a Spanish citizen currently resident in Spain (¶ 2); he is now retired, but was formerly employed by BBVA (¶ 3); and that not only has he never been a resident of the State of Connecticut (¶ 4), he has never actually been present in Connecticut (¶ 5) or done any business (either personally or through a representative) in Connecticut (¶¶ 6–13).[3] Anton avers that BBVA is a banking corporation organized and existing under Spanish law (¶ 2); BBVA maintains a branch office in New York and an agency in Miami (*id.*); and BBVA does not have: an office, mailing address, telephone listing, any employees, any agents, or any real property in Connecticut (¶¶ 3–7), although some employees of the New York office may reside in Connecticut (¶ 5).

In Sanchez's opposition to defendants' motion to dismiss (filed after a four month jurisdictional discovery period which followed defendants' motion), Sanchez asserts that BBVA: (1) earned several thousand dollars in commissions for managing pension funds for the State of Connecticut, (2) maintains a website that can be accessed from Connecticut, (3) issues ATM cards which can be used to withdraw funds at ATM machines in Connecticut, and (4) maintains a toll-free number that can be dialed from Connecticut. He also points out that Connecticut banks process checks drawn on BBVA accounts, and asserts that "'Grupo BBVA' has a partnership with AETNA[,] a Connecticut company based in Hartford," [Doc. # 108] at 4.

As to Corona's contacts with Connecticut, Sanchez asserts:

> Corona acted under the authority vested upon him by BBV[A] and acted as an agent as well, at the New York matter when he exercised free will and submitted the New York Declaration full of misrepresentations. Corona could have easily declined when asked by his legal counsel to sign the New York Declaration. Instead, he proceeded.

[Doc. # 108] at 15. He also alleges that Corona's signing of the declaration constituted causing a tort in Connecticut, as Sanchez subsequently had a heart attack in Connecticut, and that the affidavit was at some point mailed to Connecticut (presumably in the course of this litigation or the New York litigation, when copies of filings were sent to Sanchez via mail). Finally, Sanchez asserts that the declaration is false and contains irregularities in translation and form.

## II. Standard

 When challenged with a motion to dismiss for lack of personal jurisdiction

---

**3.** Corona further declares that he "does not obtain substantial revenues from goods used or services provided" in Connecticut, the United States generally, or from international commerce (¶¶ 17–18), and that he has never owned, possessed or used real property in Connecticut (¶ 19).

pursuant to Fed.R.Civ.P. 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204, 206 (2d Cir.2003) (citation omitted). Where (as here) the plaintiff has engaged in jurisdictional discovery but no evidentiary hearing has been conducted, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Id.* (internal quotations and alterations omitted).

It is by now well-established that the amenability of a foreign [defendant] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with "federal law" entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee. Accordingly, a district court must conduct a two-part inquiry when considering a motion to dismiss for lack of personal jurisdiction. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.

*Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999) (internal quotations and citations omitted).

■ Connecticut statutory law has several pertinent provisions addressed by the parties, including Conn. Gen.Stat. §§ 52–59b(a) (Connecticut's long arm statute applicable to nonresidents) and 33–929 (the long arm statute applicable to foreign corporations). If either defendant is subject to suit in Connecticut as a matter of state law, the second inquiry in the personal jurisdiction analysis is to assess whether such exercise of personal jurisdiction would "comport with the Due Process Clause, which permits a forum to exercise personal jurisdiction over a non-resident defendant who has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 152 (2d Cir.2001) (internal citations, quotations and alterations omitted).

## III. Discussion

### A. Personal Jurisdiction Over BBVA

■ Sanchez claims that BBVA's Connecticut connections (receipt of commissions from the state pension fund, maintenance of an internet site and telephone number accessible from Connecticut, and ability to transact business with customers through ATMs in Connecticut) require that BBVA procure a Certificate of Authority pursuant to Conn. Gen.Stat. § 33–920, and that BBVA is subject to personal jurisdiction under Conn. Gen.Stat. § 33–929(e) by virtue of this failure.[4] Sanchez's allegation that BBVA is operating without a required Certificate is insufficient because even if the allegation is true, personal jurisdiction is only proper under § 33–929(e) when the suit concerns those specific business activities for which the corporation was required to, but did not, procure a Certificate of Authority. *See Lombard Bros., Inc. v. General Asset Mgmt. Co.,* 190 Conn. 245, 252, 460 A.2d 481 (1983)

---

4. "Every foreign corporation which transacts business in this state in violation of section 33–920, shall be subject to suit in this state upon any cause of action arising out of such business."

(plaintiff's suit must "bear[ ] some connection with the business conducted by the foreign corporation in this state") (citations omitted).[5] Because the subject matter of Sanchez's suit bears no connection to BBVA's alleged Connecticut business activities, § 33–929(e) provides no basis for personal jurisdiction.

■ The general Connecticut long-arm statute for foreign corporations, Conn. Gen.Stat. § 33–929(f), requires less of a nexus between the subject matter of a plaintiff's suit and a defendant's Connecticut business transactions. The Connecticut Supreme Court addressed the scope of this statute in *Thomason v. Chemical Bank*, 234 Conn. 281, 661 A.2d 595 (1995), in which the court interpreted the statute's prefatory use of the term "arising out of" and determined that when foreign corporations engage in the conduct enumerated in § 33–929(f), they are amenable to suit in Connecticut on the basis of acts that may not themselves have "arisen" in Connecticut. Thus, for purposes of the section providing that "Every foreign corporation shall be subject to suit in this state... on any cause of action arising ... out of any business solicited in this state[,]" Conn. Gen.Stat. § 33–939(f)(2), the Connecticut Supreme Court held that a defendant was subject to suit in Connecticut under that provision "if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." 234 Conn. at 296, 661 A.2d 595.

Pursuant to our interpretation of the statute, a plaintiff need not show that, because of the acts of solicitation, the defendant was on notice that it might be sued by the plaintiff himself or herself. A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut. A plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation.

*Id.* Given the Connecticut Supreme Court's interpretation of § 33–929(f), Sanchez's claim that BBVA solicits customers in Connecticut through its internet site and performs consumer banking business contracts in Connecticut by telephone and use of ATM cards is relevant to the personal jurisdiction inquiry despite the absence of any direct connection between Sanchez's allegations and BBVA's alleged Connecticut business.

■ The relaxed nexus requirement of *Thomason* requires that Sanchez show that: (1) BBVA could reasonably have anticipated being subjected to suit in Connecticut by a customer who had been solicited in Connecticut and/or had made or performed contracts with BBVA in Connecticut, and (2) that Sanchez's claims are not materially different from an action that might have resulted directly from that solicitation and/or the making/performing of contracts. Sanchez cannot meet this requirement because his claim in this litigation (that BBVA is liable for fraudulently procuring the *forum non conveniens* dismissal of his New York suit against BBVA) is peculiar to his unique circumstances; it is not a claim which BBVA

---

**5.** Because of a re-codification of the Connecticut General Statutes effective January 1, 1997, *Lombard* and other cases cited in this Ruling contain references to the prior designations of the relevant statutes.

could have anticipated from the state pension fund (by virtue of BBVA's management of some state pension fund assets) or from a person who visited BBVA's internet site from Connecticut, telephoned BBVA's toll free number from Connecticut, or used a Connecticut ATM to withdraw funds from a BBVA account. Sanchez's claim is materially different from any claim that might have resulted from any of BBVA's solicitation in Connecticut and/or its making or performing of contracts in Connecticut.

## B. Personal Jurisdiction Over Corona

■ Inasmuch as Sanchez makes no claim that Corona is a resident of Connecticut, personal jurisdiction over Corona is only proper under Connecticut law if allowed by the state's long-arm statute applicable to individual non-residents, which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or over the executor or administrator of such nonresident individual or foreign partnership, who in person or through an agent:
>
> (1) Transacts any business within the state;
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
>
> (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
>
> (4) owns, uses or possesses any real property situated within the state; or
>
> (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53–451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Conn. Gen.Stat. § 52–59b(a).

Sanchez's assertion that Corona's filing of an affidavit in the New York litigation is either a tortious act in Connecticut or a transaction of business in Connecticut must fail because such the conduct did not occur in Connecticut.[6] Because the act occurred outside of Connecticut, personal jurisdiction would only be authorized by the statute if, *inter alia,* Corona regularly conducts the enumerated activities in Connecticut or derives substantial revenue from interstate or international commerce, *see* Conn. Gen.Stat. § 52–59b(a)(3)(A) & (B), and Sanchez makes no such allegation.

---

**6.** That a copy of the affidavit was at some point mailed to Sanchez in Connecticut does not convert behavior into a tort committed in Connecticut, because the conduct asserted to be actionable is the alleged misleading of the New York court; the conduct claimed to be wrongful was thus the sending of the affidavit to the court in New York, not any subsequent mailing of the affidavit to Sanchez. Similarly, the claim that Sanchez subsequently suffered a heart attack in Connecticut as a result of the affidavit, while unfortunate, does not convert the conduct into an act occurring in Connecticut because another specific subsection of the statute (§ 52–59b(a)(3)) accounts for actions occurring outside the state that cause harm in the state, but as set out below Sanchez has not alleged the additional requirements necessary to invoke that specific subsection.

### C. Procedural Issues

Sanchez makes a number of assertions about: (1) the competency, accuracy and veracity of Anton, the BBVA employee whose affidavit was submitted by BBVA in support of the instant motion and who was subsequently deposed by Sanchez, and (2) the regularity of form and the truthfulness of Corona's declaration. However, because Sanchez has not met his burden of alleging facts which, if proved, would demonstrate the Court's personal jurisdiction over BBVA or Corona, defendants' Fed. R.Civ.P. 12(b)(2) motion must be granted even without defendants' factual showing of no contacts by BBVA or Corona, *see In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d at 206 (cited *supra*), and thus Sanchez's assertions in this regard are ultimately moot. Given the extensive opportunity afforded plaintiff for discovery and the opportunity to request by motion resolution of any discovery disputes during the discovery period (an opportunity of which plaintiff availed himself several times), the complaints raised in the opposition to defendants' motion regarding inadequate access to discovery, *e.g.*, [Doc. # 109] at 8–11, are untimely and unavailing.

### IV. Conclusion

For the reasons set out above, personal jurisdiction over BBVA and Corona in this action is not authorized by Connecticut law.[7] Accordingly, defendants' motion to dismiss [Doc. # 69] is GRANTED and the Clerk is directed to close this case.

IT IS SO ORDERED.

---

7. The Court does not, therefore, decide whether exercise of such jurisdiction would comport with the federal constitution's due process guarantee.